UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOUTHEASTERN LEGAL FOUNDATION, INC.,
Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,
Defendant.

CIVIL ACTION NO. 1:19-CV-03215-JPB

**ORDER**

This matter is before the Court on Defendant Department of Justice's ("DOJ") Motion for Summary Judgment [Doc. 29] and Plaintiff Southeastern Legal Foundation, Inc.'s ("SLF") Motion for Summary Judgment [Doc. 30]. The Court finds as follows:

**BACKGROUND**

This case arises out of the SLF's request for information regarding representations the Federal Bureau of Investigation ("FBI") and the DOJ made to the Foreign Intelligence Surveillance Court ("FISC"). The parties have submitted cross motions for summary judgment in which the SLF contends that the DOJ has failed to conduct an adequate search for its requested records and the DOJ asserts that it has conducted an adequate search that resulted in the return of no records.

The Court derives the facts of this case from the DOJ's Statement of Material Facts, the SLF's Statement of Material Facts, the DOJ's Response to the SLF's Statement of Material Facts and the SLF's Response to the DOJ's Statement of Material Facts. The Court also conducted its own review of the record. The facts of this case, for the purpose of adjudicating the cross-motions for summary judgment, are as follows:

On October 21, 2016, the FISC granted the DOJ and FBI's request for a Foreign Intelligence Surveillance Act ("FISA") order authorizing the government to conduct electronic surveillance of an individual named Carter Page. [Doc. 30-2, p. 3]. The FISC issued an initial FISA warrant and three renewals thereafter. Id.

Under Section 702 of FISA, the United States may surveil foreign persons located outside of the country to acquire foreign intelligence. Id. at 9. The government is required to provide the FISC with annual certifications regarding its collection of data and minimization procedures under Section 702. Id. Specifically, the DOJ's Office of the Attorney General is responsible for adopting and overseeing the minimization procedures. Id. On October 24, 2016, the government notified the FISC that it failed to comply with the National Security Administration's minimization procedures for Section 702 searches, and the FISC condemned the DOJ's failure to meet its compliance obligations. Id. at 9–10.

On January 18, 2018, the Majority Staff of the House Permanent Select Committee on Intelligence publicly released a memorandum containing classified information. Id. at 4. The memorandum detailed concerns about the legitimacy and legality of certain DOJ and FBI interactions with the FISC in their pursuit of the above FISA warrants for Carter Page. Id. It accused DOJ and FBI officials of misconduct before the FISC. Id. The Minority Staff of the House Permanent Select Committee on Intelligence thereafter issued a memorandum stating the DOJ and FBI neither abused the FISA warrant process, nor committed misconduct before the FISC. Id. In September of 2018, President Donald J. Trump ordered the declassification of the Carter Page FISA warrant applications. Id. at 4–5.

In the meantime, on May 24, 2019, the SLF submitted a Freedom of Information Act ("FOIA") request to the DOJ in an effort to determine whether any attorneys were sanctioned for their roles in the alleged FISC misconduct regarding the Carter Page warrant applications and whether any attorneys were sanctioned for their roles in the failure to comply with Section 702 minimization procedures. [Doc. 36, p. 1; Doc. 30-2, p. 2]. The request sought the following records:

> a. All records regarding, reflecting, or related to any orders, opinions, decisions, sanctions, or other records related to any investigation or finding by the [FISC], any other court, any state licensing bar, any disciplinary committee, or any other entity, that any attorney violated the FISC Rules of Procedure or applicable Rules of Professional Conduct in connection with the Carter Page FISA

application and renewals or the Section 702 violations the government orally advised the FISC about on October 24, 2016.

b. All records regarding, reflecting or related to any orders, opinions, decisions, sanctions, or other records finding by the FISC, any other court, any state licensing bar, any disciplinary committee, or any other entity, that any attorney violated or did not violate FISC Rule of Procedure 13, specifically, in connection with the Carter Page FISA application and renewals or the Section 702 violations the government orally advised the FISC about on October 24, 2016.

c. All records regarding, reflecting or related to any referral or complaint made to any attorney disciplinary body for conduct related to the Carter Page FISA application and renewals or the Section 702 violations the government orally advised the FISC about on October 24, 2016.

[Doc. 36, pp. 1–2].

Because multiple officials were involved with the FISA applications and disciplinary matters presumably involve officials in supervisory positions across the DOJ, the SLF addressed the FOIA request to the DOJ as a whole rather than to a specific DOJ division. [Doc. 38, p. 4]. All mail addressed to the DOJ is first delivered to the DOJ's mail processing center. [Doc. 37, p. 2]. If the mail (including FOIA requests) designates a specific DOJ division or office, the mail processing center delivers it to that division. Id. If the mail does not designate a specific DOJ division or office, the mail processing center delivers the mail to the DOJ's mail referral unit. Id. at 3. The mail referral unit then reviews the information requested, identifies the DOJ division or divisions most likely to have responsive documents and then refers the mail to that division(s). Id.

The DOJ's mail referral unit acknowledged receipt of the SLF's FOIA request on June 3, 2019. [Doc. 36, p. 2; Doc. 37, p.4]. After receiving no further response to its request, the SLF filed suit against the DOJ on July 16, 2019. [Doc. 36, p. 3]. At this point, the DOJ requested unopposed extensions of time to search its records, due to an administrative error resulting in the mail referral unit's failure to forward the SLF's request to the relevant DOJ division(s). [Doc. 36, pp. 2–3; Doc. 37, p. 4]. The DOJ's mail referral unit then referred the SLF's FOIA request to the DOJ's National Security Division ("NSD"). [Doc. 37, p. 4]. After reviewing the FOIA request, the mail referral unit identified the NSD as the DOJ division likely to have responsive documents because the NSD is responsible for administering FISA and practicing before the FISC. Id.

On November 21, 2019, the DOJ notified the SLF of the following: (1) the DOJ's document search was limited to documents within the NSD; (2) the search was limited to three NSD custodians—the Assistant Attorney General for National Security, the Office of Intelligence Operations Section Chief and the Oversight Section Chief; (3) when conducting the search, the DOJ used the phrases "FISC rules" and "FISC rule of procedure 13" as its search terms; and (4) based on this search, the DOJ did not locate any records responsive to the FOIA request. [Doc. 30-2, pp. 11–12]. On December 2, 2019, the SLF notified the DOJ that it disputed the adequacy of this search. Id. at 12. The SLF did not dispute the DOJ's decision

to search NSD records, but it did dispute the limitation of the search terms to only three NSD custodians and the limitation of the search to only two search phrases. Id. The SLF also disputed the DOJ's decision to only search NSD records and no other DOJ division's records. Id. The SLF therefore provided the DOJ with a list of suggested search terms and custodians believed to have responsive records. Id.

On December 9, 2019, within the time frame during which the DOJ was conducting its second search for responsive documents, the DOJ Office of Inspector General ("OIG") released a report titled U.S. Department of Justice Office of the Inspector General's Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation ("OIG Report"). Id. at 5. Regarding the Carter Page FISA applications, the OIG Report highlighted the "Failure to Share Relevant Factual Information with [the Office of Intelligence], the Department's Decision Makers, and the Court, and Other FISA Related Errors." [Doc. 30-6, p. 417]. In summary, the OIG determined that

> relevant information was not shared with, and consequently not considered by, the decision makers who ultimately decided to support the applications. The failure to update [the Office of Intelligence] with accurate and complete information resulted in FISA applications that made it appear that the evidence supporting probable cause was stronger than was actually the case . . . . [The OIG] identified at least 17 significant errors and omissions in the Carter Page FISA applications.

Id. at 417–420. Importantly, for the FOIA search at issue here, the OIG Report publicly disclosed various DOJ offices involved with the Carter Page FISA

applications. For example, as a part of its investigation, the OIG obtained documents "from attorneys and supervisors in NSD, [the DOJ's Criminal Division], [the Office of the Deputy Attorney General], and the Office of the Attorney General." Id. at 47.

On March 11, 2020, the DOJ notified the SLF of the following: (1) the DOJ's second document search was limited to documents within the NSD; (2) the search was limited to an additional four NSD custodians (of the twelve custodians the SLF suggested); (3) when conducting the search, the DOJ expanded the search terms to include some of the terms the SLF suggested; and (4) based on this search, the DOJ did not locate any records responsive to the FOIA request. [Doc. 30-2, p. 15]. The SLF now challenges the adequacy of the DOJ's records search before the Court.

## DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. Id. However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

**B. Freedom of Information Act**

"The FOIA is primarily an access and disclosure statute. It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary." Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020) (citation and punctuation omitted). Under FOIA, "the burden [is] on the agency to sustain its action" and district courts "determine the matter de novo." U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 755 (1989) (citation and punctuation omitted).

An agency establishes the adequacy of a search for responsive documents by showing "beyond a material doubt" that it "conducted a search reasonably calculated to uncover all relevant documents." Broward Bulldog, Inc. v. U.S. Dep't of Just., 939 F.3d 1164, 1175 (11th Cir. 2019) (citation and punctuation omitted). "The agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." Id. at 1176. Because the standard for the search is one of reasonableness, the agency is not required "to exhaust all files which conceivably could contain relevant information." Id. Importantly, however, the agency must make "a diligent search for [the] documents in the places in which they might be expected to be found." Id.

Here, while conducting its searches, the DOJ was aware of the following information: (1) the SLF was requesting documents related to the attorneys involved with the alleged misconduct surrounding the Carter Page FISA applications; (2) attorneys and supervisors across numerous DOJ divisions were involved with the DOJ's OIG investigation into the alleged misconduct surrounding the Carter Page FISA applications; (3) the SLF was requesting documents related to the attorneys involved with the failure to comply with the Section 702 minimization procedures; and (4) the DOJ's Office of the Attorney General is responsible for adopting and overseeing the minimization procedures. The DOJ's affidavits state that the DOJ mail referral unit identified the NSD as the DOJ division likely to have responsive documents to the SLF's requests because the NSD is responsible for administering FISA and practicing before the FISC. But, "[i]t is not clear from [the DOJ's] affidavit[s] that the [NSD] is the *only* possible place that responsive records are likely to be located. At the very least, [the DOJ] was required to explain in its affidavit[s] that no other [division] was likely to produce responsive documents." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Therefore, "[t]he [affidavits do] not show, with reasonable detail, that the search method, namely searching [only NSD] records, was reasonably calculated to uncover all relevant documents." Id.

Importantly,

> A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

Id. Because the DOJ's affidavits do not adequately describe the DOJ's search, "summary judgment on the adequacy of the search [is] improper." Id. The DOJ is ordered to submit a reasonably detailed affidavit upon which the reasonableness of its search can be judged. Id. (directing the district court to order the defendant to submit a reasonably detailed affidavit on remand).

## CONCLUSION

For the foregoing reasons, this Court **HEREBY DENIES** the DOJ's Motion for Summary Judgment [Doc. 29] and the SLF's Motion for Summary Judgment [Doc. 30] without prejudice to refile upon the DOJ's submission of a reasonably detailed affidavit in accordance with this Order.

**SO ORDERED** this 15th day of March, 2021.

**J. P. BOULEE**
United States District Judge