UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOUTHEASTERN LEGAL
FOUNDATION, INC.,

       Plaintiff,

   v.

UNITED STATES DEPARTMENT
OF JUSTICE,

       Defendant.

CIVIL ACTION NO.
1:19-cv-03215-JPB

## ORDER

Before the Court is the United States Department of Justice's ("DOJ")

Motion for Summary Judgment ("DOJ's Motion") (ECF No. 48) and the

Southeastern Legal Foundation, Inc.'s ("SLF") Cross Motion for Summary

Judgment ("SLF's Motion") (ECF No. 49).  Having reviewed and fully considered

the papers filed therewith, the Court finds as follows:

## I.    BACKGROUND

SLF brings this action against the DOJ for violation of the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*.  SLF alleges that the DOJ

refused "to employ search methods reasonably likely to lead to the discovery of

records responsive to SLF's [FOIA] request" and thus failed to produce responsive records.  ECF No. 1 at 6.

The parties agreed not to conduct discovery and thereafter filed a first round of motions for summary judgment.  The key issue in those motions was the reasonableness of the DOJ's search for responsive documents.  The Court ultimately denied the motions without prejudice and ordered the DOJ to submit a reasonably detailed affidavit upon which the adequacy of its search could be judged.  ECF No. 46 at 11.

The DOJ has now refiled its motion for summary judgment with a supplemented affidavit, to which SLF responds by filing a cross motion for summary judgment.

## II.    **RELEVANT FACTS**

As an initial matter, the Court notes that the DOJ's facts are largely undisputed.  Under Northern District of Georgia Civil Rule 56.1(B)(2)(a), the Court deems a movant's facts as "admitted" unless the non-movant (i) directly refutes the movant's fact with specific citations to evidence; (ii) states a valid objection to the admissibility of the fact; or (iii) points out that the movant's citation does not support the fact, the fact is not material or the movant otherwise has failed to comply with applicable rules.  Additionally, "[t]he response that a

party has insufficient knowledge to admit or deny [a statement of fact] is not an acceptable response," unless the party has sought to remedy its lack of knowledge. *Id*.

Here, SLF's response to thirty-six of the DOJ's forty-six statements of fact includes the contention that it "lacks knowledge to confirm or deny" such facts.[1] *See* ECF No. 49-2, ¶¶ 1-10, 12-15, 19-33, 40-46.  The Court will therefore deem those thirty-six statements of fact as admitted.

SLF does not dispute the remaining ten statements of facts, and the only significant dispute it raises concerns whether the DOJ conducted an adequate search.  That contention does not, however, attack the veracity of the DOJ's facts and instead goes to the ultimate issue in this case.  Therefore, the Court finds that there is no genuine dispute regarding the DOJ's facts.  The issue then for the Court to resolve on the DOJ's Motion is whether the facts demonstrate that the DOJ is entitled to judgment as a matter of law.

---

[1] The DOJ's Statement of Facts relies largely on the declarations of Joseph E. Gerstell, an employee of the Justice Management Division who has oversight of the DOJ's mail-processing contract in the Washington, D.C. Metropolitan area, and Kevin G. Tiernan, the Supervisory Records Manager in the Records and FOIA unit of the National Security Division of the DOJ.  *See* ECF Nos. 48-2, 48-3, 48-4, 48-5.

On the other hand, SLF's statement of facts is largely disputed.  The DOJ

denies that its search was inadequate and takes issue with any of SLF's statements

that would imply so.  The DOJ also contends that many of SLF's citations do not

support its facts and that many facts are not material to this case.  To the extent that

SLF's facts are material to the resolution of the DOJ's Motion, the Court views

them and all factual inferences therefrom in the light most favorable to SLF and

resolves all reasonable doubts in favor of SLF.  *See Am. Bankers Ins. Grp. v.

United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

With this background, the facts upon which the Court relies to resolve the

motions are as follows:

On or about May 23, 2019, SLF sent a FOIA request via U.S. Mail

addressed to the DOJ's Mail Referral Unit ("MRU").  ECF No. 49-2, ¶ 11.  The

request sought:

> All records regarding, reflecting, or related to any orders, opinions,
> decisions, sanctions, or other records related to any investigation or
> finding by the Foreign Intelligence Surveillance Court (FISC), any
> other court, any state licensing bar, any disciplinary committee, or any
> other entity, that any attorney violated the FISC Rules of Procedure or
> applicable Rules of Professional Conduct in connection with the
> Carter Page [Foreign Intelligence Surveillance Act of 1978 ("FISA")]
> application and renewals or the Section 702 violations the government
> orally advised the FISC about on October 24, 2016.
>
> All records regarding, reflecting or related to any orders, opinions,
> decisions, sanctions, or other records finding by the FISC, any other

4

court, any state licensing bar, any disciplinary committee, or any other
entity, that any attorney violated or did not violate FISC Rule of
Procedure 13, specifically, in connection with the Carter Page FISA
application and renewals or the Section 702 violations the government
orally advised the FISC about on October 24, 2016.

All records regarding, reflecting or related to any referral or complaint
made to any attorney disciplinary body for conduct related to the
Carter Page FISA application and renewals or the Section 702
violations the government orally advised the FISC about on October
24, 2016.

*Id*.

The DOJ's MRU reviews FOIA requests not addressed to a specific
component of the DOJ[2] and identifies the component(s) most likely to have
documents responsive to that request. *Id*. ¶ 7. The request is then referred to the
respective component. *Id*.

In making referral determinations, the MRU carefully reviews the wording
of each request and, on a case-by-case basis, may rely on a variety of reference
materials, such as a keyword list, summaries of the responsibilities of each
component as listed on the DOJ's website and other publicly available information.
*Id*. ¶ 8. Once a referral decision is made, the MRU does not revisit it unless the

---

[2] The DOJ "is organized into a number of bureaus, divisions, offices, and boards,
which are referred to as 'components.'" The United States Department of Justice,
Office of Information Policy, Make a FOIA Request to DOJ,
https://www.justice.gov/oip/make-foia-request-doj (last visited Mar. 30, 2022).

requester submits another request to the MRU or the respective component of the DOJ asks the MRU to refer the request to another component. *Id*. ¶ 9. Therefore, new information that comes to light after a referral decision is made will not impact the determination. *Id*. ¶ 10.

The foregoing description of the MRU referral process is generally reflected in the DOJ's regulations. 28 C.F.R. § 16.3(a)(1) explains that the DOJ "has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component." It further states that the DOJ's "FOIA Reference Guide . . . contains descriptions of the functions of each component and provides other information that is helpful in determining where to make a request." *Id*. Section (a)(2) confirms that if requests are sent to the MRU as opposed to a specific component, the MRU "will forward the request to the component(s) that it determines to be most likely to maintain the records that are sought."

When the MRU reviewed SLF's request in August 2019, it determined that the National Security Division ("NSD") of the DOJ was the component most likely to maintain records responsive to SLF's request. ECF No. 49-2, ¶ 12. SLF's request sought records related to the FISC, the FISC Rules of Procedure and FISA applications, *id*., and the NSD is the DOJ component responsible for handling

FISC and FISA matters, *id*. ¶ 13.[3]  It is the MRU's practice to direct to the NSD any requests relating to the FISC or FISA.  *Id*. ¶ 13.

There was no indication in SLF's request that any other DOJ component besides the NSD was most likely to maintain the records sought.  *Id*. ¶ 14.  In the absence of any reference on the face of the request to any other DOJ component or official, the MRU had no reason to believe that any other component was likely to have responsive records.  *Id*. ¶ 15.

The NSD maintains a correspondence tracking system for formal correspondence sent and received by its leadership.  *Id*. ¶ 23.  It determined, based on the subject matter of SLF's request, that if any responsive records existed, such records would likely be identified in that tracking system.  *Id*. ¶ 24.  The NSD

---

[3] DOJ regulations list the following functions, among others, as assigned to the NSD:

> "Administer [FISA]"; "Prosecute Federal crimes involving national security, foreign relations, and terrorism, and coordinate the Department's activities and advice on all issues with respect to [FISA] and the Classified Information Procedures Act arising in connection with any such prosecutions"; "Supervise the preparation of certifications and applications for orders under [FISA] and the representation of the United States before [the FISC] and the United States Foreign Intelligence Court of Review"; and "Recommend action by the Department . . . with regard to applications under [FISA], as well as with regard to other investigative activities by executive branch agencies."

ECF No. 49-2, ¶ 16.

conducted a search using the search terms "FISC rules" and "FISC rule of procedure 13" and did not identify any records responsive to SLF's request. *Id*. ¶¶ 22, 25.

The NSD also conducted electronic searches of some of its leadership's electronic mail accounts using the search terms "FISC rules" and "FISC rule of procedure 13." *Id*. ¶ 26. These individuals included the Assistant Attorney General for National Security, the Principal Deputy Assistant Attorney General and the Assistant Attorney General responsible for overseeing the NSD's Office of Intelligence. *Id*. ¶ 27. These searches also did not identify any records responsive to SLF's request. *Id*. ¶ 29.

Since the NSD lacks a fully centralized recordkeeping system, where appropriate, it supplements its FOIA searches by consulting with likely records custodians. *Id*. ¶ 31. In this case, the NSD determined that it was appropriate to consult with NSD subject matter experts who would be likely custodians of records responsive to SLF's request, if there were any. *Id*. ¶ 30. These individuals included the Assistant Attorney General for National Security, the Principal Deputy Assistant Attorney General, the Office of Strategy Management and Development Acting Chief, the Office of Intelligence Operations Section Chief

and the Oversight Section Chief.  *Id*. ¶ 32.  These consultations did not uncover

any records responsive to SLF's request.  *Id*. ¶ 33.

SLF was informed that NSD's search did not yield any responsive

documents, and SLF disputed that the search was adequate.  ECF No. 51 ¶ 19.

Pursuant to an agreement between the parties, SLF thereafter provided the DOJ

with a list of search terms to run and a list of custodians it believed would have

records responsive to its request.[4]  *Id*.  The custodian list included individuals in

the NSD as well as in several other components outside the NSD.  *Id*. ¶ 22.

The NSD conducted additional searches based on SLF's list, except that it

did not search the records of non-NSD personnel.  ECF No. 49-2, ¶¶ 40-41.  The

NSD is not responsible for FOIA responses of other components within the DOJ.

*Id*. ¶ 41 n.1.  The NSD's follow up search therefore included only four of the

twelve custodians SLF had identified.  ECF No. 51, ¶ 30.  NSD did not search the

---

[4] SLF's suggested search terms were:  "FISC and omission"; "FISC and misstatement"; "FISC and correction"; "FISC and non-compliance"; "FISC and misconduct"; "FISA and omission"; "FISA and misstatement" ; "FISA and correction"; "FISA and non-compliance" ; "FISA and misconduct"; "Page and omission"; "Page and misstatement" ; "Page and correction"; "Page and non-compliance" ; "Page and misconduct"; "Carter and omission"; "Carter and misstatement"; "Carter and correction"; "Carter and non-compliance"; "Carter and misconduct"; "Woods and omission"; "Woods and misstatement" ; "Woods and correction"; "Woods and non-compliance" ; "Woods and misconduct"; "FISC and Rule 13"; "FISC and R.13"; "Rules of Professional Conduct"; "bar and complaint"; "bar and investigation"; and "Clinesmith".

records of DOJ employees Loretta Lynch, Sally Yates, Dana Boente, Rod Rosenstein, Andrew Weissmann, George Toscas and John Carlin, who were not part of the NSD.  *Id*. ¶ 32.

The NSD also did not search the records of one NSD Deputy Assistant Attorney General because it determined that he was not reasonably likely to hold responsive records.  ECF No. 49-2, ¶ 42.  This person was not in the chain of command related to the subject of SLF's request and does not practice before the FISC.  *Id*. ¶ 43.

The NSD is not aware of any claims (as set forth in SLF's request) that any NSD attorney "violated the FISC Rules of Procedure or applicable Rules of Professional Conduct in connection with the Carter Page FISA application and renewals or the Section 702 violations the government orally advised the FISC about on October 24, 2016."  ECF No. 49-2, ¶ 45.

Based on its searches and consultation with knowledgeable personnel, the NSD concluded that it had searched all locations reasonably likely to contain records responsive to SLF's request.  *Id*. ¶ 46.  On March 11, 2020, the DOJ informed SLF that the additional searches yielded no records.  ECF No. 51, ¶ 29.

SLF, however, contends that the December 2019 U.S. Department of Justice Office of the Inspector General's Review of Four FISA Applications and Other

Aspects of the FBI's Crossfire Hurricane Investigation ("OIG Report") shows that the DOJ does possess records responsive to SLF's request. *Id.* ¶ 12.

The DOJ counters that SLF's citation to the OIG Report does not support its claim. SLF did not provide a pin cite to the 479-page OIG Report, and the Court could not identify what portion of the report supports SLF's claim.

### III. DISCUSSION

#### A. Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court … is 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

B.    **Analysis**

"FOIA is primarily an access and disclosure statute.  It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary." *Freeman v. Fine*, 820 F. App'x 836, 838 (11th Cir. 2020) (citation and punctuation omitted).  However, FOIA "is hardly an area in which the courts should attempt to micro manage the executive branch" because complying with FOIA's provisions requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Under FOIA, the burden is "'on the agency to sustain its action.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (citation omitted).  An agency establishes the adequacy of a search for responsive documents by showing "beyond a material doubt" that it "conducted a search reasonably calculated to uncover all relevant documents." *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1175 (11th Cir. 2019) (citation and punctuation omitted).  "The agency may meet this burden by producing affidavits of responsible officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Id*. at 1176.

Because the requisite search standard is one of reasonableness, the agency is not required "to exhaust all files which conceivably could contain relevant information." *Id*. The issue "'is ***not*** whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.'" *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). Regardless, the agency must conduct "a diligent search for [the] documents in the places in which they might be expected to be found." *Broward*, 939 F.3d at 1176. "[I]f a review of the record raises substantial doubt [regarding the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal citations and punctuation omitted).

Here, the crux of SLF's argument is that the DOJ's search was inadequate because it refused to search for records outside the NSD. In SLF's view, "the NSD could not reasonably be the only DOJ component likely to have records responsive to SLF's request." ECF No. 49-1 at 23. SLF underscores that it sent the request to the MRU rather than to a specific component for this reason and argues that "more

than one component within the DOJ can—and should—respond to a single request when necessary." *Id*. at 19, 23.

The DOJ counters that it processed SLF's request in accordance with its regulations. It points out that those regulations provide that requests sent to the MRU (as opposed to a specific component) will be processed by the component(s) to which the MRU forwards the request and that the MRU's referral decision is based on which component(s) it believes is "***most likely*** to have responsive documents." ECF No. 52 at 2.

The DOJ further argues that

> the MRU is not tasked with the responsibility of determining whether [the] NSD is the ***only*** possible component where responsive records might be located . . . [nor is it] responsible for forwarding requests to every DOJ component that . . . could possibly have records or even that would be likely [to] have responsive records; [the MRU] has the far more manageable task of making an administrative determination as to which component(s) are "most likely" to have responsive records and sending the requests there for processing.

*Id*.

The DOJ concludes that it satisfied its FOIA obligations here because (i) the MRU reviewed the request and determined that the NSD was most likely to have responsive documents; and (ii) the NSD conducted an adequate search. The DOJ reasons that its "detailed explanation" of both the MRU's referral process and the

NSD's search efforts demonstrate the adequacy of the DOJ's response.  ECF No. 48-1 at 17.

Additionally, the DOJ argues that the law does not require it to complete an exhaustive search for all possible documents.  It contends that its obligation is simply to conduct a search that is reasonably calculated to uncover all relevant documents, which it asserts the undisputed evidence shows it has done.  For all of these reasons, the DOJ urges the Court to dismiss SLF's complaint.

SLF does not dispute the DOJ's assertion that SLF is "a very seasoned FOIA litigant—as demonstrated by multiple requests [it has sent] to various components" and cases it has filed regarding FOIA requests.  ECF No. 48-1 at 13.  SLF also does not dispute that it "could have very easily sent a request to the specific components [it] believed [would] have responsive documents."  *Id*.  Rather, the record shows that SLF specifically chose to send the request to the MRU, which would determine to which component to refer the request.  When the MRU referred the request to the NSD only, as it is permitted to do, SLF complained that the MRU should have forwarded the request to additional components of the DOJ or that the NSD, which ultimately received the request, should have searched for documents across multiple components.

However, SLF has not cited any law that authorizes the Court either to direct how the MRU makes its referral decisions or to impose search obligations on the NSD beyond what the DOJ's regulations require.  While the Court is cognizant of "the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA]," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989), the Court is also mindful of not micromanaging the DOJ's processes for responding to general requests sent to its MRU, *see Johnson*, 310 F.3d at 776.  This is particularly true where, as here, an existing DOJ regulation directs how those requests should be handled.

SLF's reliance on the opinion in *Public Employees for Environmental Responsibility v. United States International Boundary and Water Commission* is misplaced because that case concerned an agency's decision to respond to a question that the plaintiff "did not ask."  842 F. Supp. 2d 219, 225 (D.D.C. 2012). It is inapposite because this dispute does not concern whether the NSD used the appropriate search terms.  Indeed, the NSD used the search terms SLF provided and searched records of the NSD custodians that SLF identified.

Likewise, the opinion in *Institute for Policy Studies v. Central Intelligence Agency*, 885 F. Supp. 2d 120 (D.D.C. 2012), does not support SLF's position. There, the court found that the defendant's search was not reasonable because it

failed to search three directories within the agency that it admitted would likely contain responsive documents.  In contrast, SLF's claim here is that the NSD did not search for records outside its boundaries, not that the NSD failed to search for records within its own system.

With respect to the bottom-line issue of whether the DOJ's search for responsive documents was adequate, *see Weisberg*, 705 F.2d at 1351, the Court finds that the DOJ has shown that (i) the MRU followed the established process for referring general FOIA requests; (ii) pursuant to that process, the MRU referred the request to only the NSD; (iii) the NSD conducted an initial search for documents, and at SLF's request conducted a follow up search based on search terms SLF provided and certain custodians SLF identified; and (iv) the NSD consulted subject matter experts as part of the search.  These facts are sufficient to show "beyond a material doubt" that the DOJ's search was reasonable based on its established processes and its regulations.

By choosing to send a general request to the MRU, SLF accepted the inherent risk that the MRU will send the request to fewer or none of the components that SLF believes are relevant.  The Court declines to require the DOJ to change its processes or regulations for addressing non-specific FOIA requests or otherwise require the NSD to search for records outside its boundaries.  If SLF

believes that its request should go to a component other than the NSD, it has the option to send a request to that component.

Based on the foregoing analysis, the Court **GRANTS** the DOJ's Motion (ECF No. 48) and **DENIES** SLF's Motion (ECF No. 49).  The Clerk is, however, **DIRECTED** to refrain from terminating the case at this time as there are still pending issues in this action.

A similar case between these parties was previously pending before the Honorable Mark H. Cohen of this district (the "Cohen Case").  On August 23, 2021, the Cohen Case was transferred to the undersigned and consolidated with this case.  Since consolidation, the parties have not filed any motions or otherwise prosecuted the Cohen Case.  The parties are therefore **DIRECTED** to provide a status update regarding the Cohen Case within seven days of the date of this Order. Failure to do so may result in dismissal of the Cohen Case for lack of prosecution.

**SO ORDERED** this 31st day of March, 2022.

_____
**J. P. BOULEE**
United States District Judge